**Ada RAMIREZ, Plaintiff,**

v.

**MIAMI–DADE COUNTY, Defendant.**

**Case No. 11–cv–22651–KMM.**

United States District Court, S.D. Florida.

Feb. 17, 2012.

Maxwell Miller Nelson, Matthew S. Sarelson, Sarelson Law Firm, P.A., Miami, FL, for Plaintiff.

Lee Alan Kraftchick, Miami, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary

Judgment (ECF No. 17). Plaintiff filed a Response (ECF No. 34), and Defendant filed a Reply (ECF No. 39). The Motion is now ripe for review. UPON CONSIDERATION of the Motion, the Plaintiffs Response, the Defendant's Reply, the pertinent portions of the Record, and being otherwise fully advised in the premises, this Court enters the following Order.

## I. BACKGROUND [1]

This is an action for alleged employment discrimination, retaliation, and sexual harassment under Title VII of the Civil Rights Act of 1964. Plaintiff Ada Ramirez is a thirty-year-old, single mother. Defendant Miami–Dade County ("the County") is a Florida municipality.

In May 2008, Ramirez was hired by the County to serve as a Specialist 2 in the County's Fire Department. Ramirez's responsibilities included supervising six other employees responsible for the Fire Department's payroll. As a new employee, Ramirez was subject to a one-year "probationary period." This probationary period, outlined in the County's Personnel Rules for the Classified Service, exists for the purpose of "closely observing the employee's work ... and for rejecting any employee whose performance does not meet the required standard." Def.'s Ex. 1, at 8 (ECF No. 19–5). An employee on probation is subject to dismissal or demotion without a right of appeal.

Shortly after beginning work with the Fire Department, Ramirez began working on a project with Captain Gregory Rubin. Soon thereafter, while riding in a car together, Ramirez remarked that the street they were driving on was part of her jogging route. According to Ramirez, Rubin responded that "If I was running with you, I would run behind you because it's a better view." Ramirez then attempted to defuse the situation by informing Rubin that "we're not going there."

Throughout the course of her employment with the County, Ramirez had several other encounters with Rubin that form the basis of Ramirez's Complaint. On one occasion, Ramirez had recently finished exercising at the Fire Department's gym. As she was walking through the parking lot, she encountered Rubin, who she alleges "eye[d her] up and down." On another occasion, Rubin approached Ramirez's desk to look at something "work related." Rubin positioned his chair so that he sat close behind Ramirez, which caused Ramirez to feel "uncomfortable." In November 2008, Rubin informed Ramirez that she should not worry about her professional development because she was "attractive and 'seemingly' competent."

Ramirez also alleges that on several occasions Rubin made comments regarding Ramirez's status as a single woman. In December 2008, Rubin asked Ramirez if she had a boyfriend. When Ramirez responded that she did not have a boyfriend, Rubin allegedly told Ramirez that she would "have one soon, especially working in this department with so many men." Approximately two months later, after noticing that Ramirez seemed "a little on edge," Rubin asked Ramirez, "Do you need a boyfriend?"

---

1. The facts herein are taken from Plaintiff's Complaint (ECF No. 1); Defendant's Motion for Summary Judgment; Defendant's Statement of Material Facts (ECF No. 18); Documents in Support of Defendant's Statement of Material Facts (ECF No. 19); Plaintiff's Response to Defendant's Motion for Summary Judgment; Plaintiff's Response to Defendant's Statement of Material Facts and Additional Facts (ECF No. 33); and Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment. All facts are construed in the light most favorable to Plaintiff.

On March 6, 2009, Ramirez had a meeting with her supervisors (the "March 6 meeting") regarding complaints her supervisors had received from her coworkers and subordinates over her attitude and behavior. Ramirez's subordinates had complained that Ramirez often condescendingly reminded them that she was in charge because she had a college degree and they did not. Ramirez's subordinates also complained that Ramirez was often away from her desk and unavailable, and that Ramirez had the unprofessional habit of returning to the workplace in her exercise clothes. At the meeting, Ramirez's supervisors informed Ramirez that her "management style was perceived of as condescending, unprofessional and in violation of County philosophy and policy." Her supervisors also informed Ramirez that in addition to her staff, coworkers, such as Rubin, had complained of her attitude.

Upon learning that Rubin had complained about her, Ramirez notified her supervisors that Rubin had sexually harassed her. Three days later Ramirez submitted a formal complaint that detailed her allegations against Rubin. The Fire Department's Internal Affairs division then conducted an investigation, and after interviewing those involved, concluded on March 13, 2009 that Ramirez's allegations could not be sustained.

Subsequent to the March 6, 2009 meeting, several other incidents came to light that reflected poorly on Ramirez. A subordinate informed Ramirez's supervisor that Ramirez had delegated to her the task of dealing with personnel conflicts among subordinates. Ramirez's supervisor was surprised at this unilateral delegation, because Ramirez was expected to deal with staff conflicts. Additionally, Ramirez's supervisors were made aware of Ramirez's allegedly poor behavior at a meeting with a member of the County Manager's staff.

On May 7, 2009, Ramirez's supervisor recommended that Ramirez fail the mandatory probation Ramirez was subject to as a new employee. An internal memo from Ramirez's supervisor to Herminio Lorenzo, Fire Chief, stated that "Ramirez has repeatedly displayed a poor attitude as it relates to her subordinates and members of Executive Staff. Based on the foregoing, it is with regret that I asked that she be removed from her probationary position of Personnel Specialist 2, not suitable for rehire." Ramirez's employment with the County was subsequently terminated, and on May 12, 2009, Ramirez filed a complaint with the Equal Opportunity Commission ("EEOC"). On May 16, 2011, the EEOC issued a Letter of Determination that concluded there was reason to believe that Ramirez was discharged in retaliation for her sexual harassment complaint. Approximately two months later, Ramirez filed the instant action.

## II. LEGAL STANDARD

Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Moreover, "A party must support its assertion that there is no genuine issue of material fact by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials.' " *Ritchey v. S. Nuclear Operating Co.*, 423 Fed.Appx. 955, 956–57 (11th Cir.2011) (quoting Fed.R.Civ.P. 56(c)(1)). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121

F.3d 642, 646 (11th Cir.1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

■ As an initial matter, Ramirez, in her Response to Defendant's Motion for Summary Judgment, attempts to withdraw two of the three counts from her initial Complaint *See* Pl.'s Resp., at 1 ("Although there is ample evidence for all three counts to go to the jury, and although the EEOC found reasonable cause for all claims, Ms. Ramirez will withdraw her first two counts, hostile work environment and discrimination, because of the clear undisputed and overwhelming evidence supporting her claim for retaliation."). This is improper, because Federal Rule of Civil Procedure 41 "allows a plaintiff to dismiss all of his claims against a particular defendant; its text does not permit plaintiffs to pick and choose, dismissing only particular claims within an action." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1106 (11th Cir.2004); *see also State Treasurer v. Barry,* 168 F.3d 8, 19 n. 9 (11th Cir. 1999). As Ramirez has not amended her Complaint, nor sought leave to amend her Complaint pursuant to Federal Rule of Civil Procedure 15, this Court will evaluate all three counts of Ramirez's Complaint in light of Defendant's Motion for Summary Judgment.

### A. Hostile Work Environment

■ Count III of Ramirez's Complaint alleges that Rubin's behavior created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. Title VII states that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has interpreted Title VII to extend to employers who require "people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To succeed at trial on a hostile work environment claim, a plaintiff must demonstrate "(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." *Mendoza v. Borden, Inc.,* 195 F.3d 1238, 1245 (11th Cir.1999) (en banc). "In deciding whether a hostile environment was created factors to consider include the frequency of the discriminatory conduct, the severity of the discriminatory conduct, whether the conduct is threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiffs performance at work." *Edwards v. Wallace Cmty. College,* 49 F.3d 1517, 1522 (11th Cir.1995); *see also Harris,* 510 U.S. at 21, 114 S.Ct. 367 ("When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,'

that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal quotations and citations omitted))).

In *Mitchell v. Pope,* 189 Fed.Appx. at 912–15 (11th Cir.2006), the United States Court of Appeals for the Eleventh Circuit reviewed a district court's grant of summary judgment in favor of the defendant-employer. In the district court, plaintiff had alleged sixteen instances of sexual harassment over the course of four years. This sexual harassment included instances where the defendant

> (1) tried to kiss [Plaintiff] after the 1999 Sheriff's Department Christmas party and called her a "frigid bitch" when she refused, (2) showed up at places Plaintiff was "staking out" in December 1999 and told her "you must be working out" and "you sure do look fine," (3) appeared several times in [Plaintiff's] driveway in January 2000, once drunk, when he told Plaintiffs son that he loved Plaintiff, (4) suggested [Plaintiff] wear certain jeans and commented "your ass sure does look fine," (5) told [Plaintiff] "you can just walk into the room and I'd get an erection," (6) stood on his tiptoes to look down [Plaintiff's] shirt, (7) rubbed up against her, whispered in her ear, and put his arm across her chest.

*Id.* at 919 n. 3 (describing sixteen instances of sexual harassment). In affirming the district court's grant of summary judgment in favor of the defendant-employer, the Eleventh Circuit explained that "[a]lthough [defendant's] reprehensible behavior only can be described as crass and juvenile, we accept that this behavior—given its relative infrequency—is not the kind of 'severe' harassment necessary for liability to attach under Title VII." *Id.* at

913–14; *see also Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 584–86 (11th Cir. 2000), abrogated on other grounds as recognized by *Crawford v. Carroll,* 529 F.3d 961, 974 (11th Cir.2008) (holding that defendant's actions placing his hand on plaintiff's knee and touching the hem of plaintiff's dress were not severe or pervasive enough to amount to a hostile work environment); *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430–31 (7th Cir.1995) (holding that in a seven-month period, nine sexually offensive incidents, including a gesture to the plaintiff intended to suggest masturbation did not constitute a hostile environment).

◼ Here, Ramirez claims that Rubin sexually harassed her on six different occasions throughout the course of her year-long employment with the County Fire Department. None of the incidents involved physical contact, threats, or vulgar remarks, and it was not until Ramirez found out from her supervisors that Rubin had complained of her workplace attitude did Ramirez claim that Rubin's behavior affected her work environment. While some of Rubin's comments contained demeaning overtones, in light of *Mitchell, Gupta,* and other cases, see *supra,* no reasonable person could view Rubin's behavior as objectively severe or pervasive. Consequently, summary judgment is awarded in favor of Defendant as to Count III of Ramirez's Complaint.

### B. *Employment Discrimination*

◼ Count I of Ramirez's Complaint alleges that Ramirez's employment was terminated because of her gender in violation of Title VII of the Civil Rights Act of 1964. Where there is no direct evidence of discrimination, to succeed at trial on a claim of discriminatory discharge a plaintiff must demonstrate that "(1) the plaintiff was a member of a protected class, (2) the

plaintiff experienced an adverse job action, (3) the plaintiffs employer treated similarly situated employees outside [of the plaintiff's] classification more favorably, and (4) the plaintiff was qualified to do the job." *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir.2003); *see also Holifield v. Reno*, 115 F.3d 1555, 1561–62 (11th Cir.1997). Here, the record is devoid of any fact that would support the finding that Defendant treated similarly situated male employees more favorably. Thus, Ramirez's has failed to make out a prima facie case of discriminatory discharge and summary judgment is awarded in favor of Defendant as to Count I of Ramirez's Complaint.

### C. Retaliatory Discharge

 Count II of Ramirez's Complaint alleges that Ramirez was discharged in retaliation for the sexual harassment complaint she filed against Rubin. Ramirez argues that there is direct evidence of discrimination and retaliatory discharge. Direct evidence of discrimination is "evidence that reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Com'rs*, 512 F.3d 1296, 1300 (11th Cir.2008) (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir.2004)). "Evidence that only suggests discrimination, or that is subject to more than one interpretation, does not constitute direct evidence." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir.1997). If a nonmovant presents direct evidence of discrimination that would be sufficient to win at trial, "summary judgment is not appropriate even where the movant presents conflicting evidence." *Id.* (quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996)).

Here, County Fire Chief Herminio Lorenzo was asked during a deposition, "In making your decision [not to rehire Ramirez], did you consider at all the fact that she'd filed previously a sexual harassment claim?" to which Lorenzo responded "Yes, we did." Ramirez argues that Lorenzo's testimony is direct evidence of discrimination and retaliatory discharge. While this may initially seem true, a review of Lorenzo's testimony surrounding the portion highlighted by Ramirez reveals a much different attitude and motivation:

Q. In that same paragraph, [Ramirez is] also accused of attending a meeting with Assistant Director and a member of the County Management staff, wherein "she refused to engage on a major project"?

A. Yes.

Q. So, this was evidence of her condescending or inappropriate attitude toward the people she was supposed to be working with; is that right?

A. Yes, it is.

Q. So, this memo puts forth the specifics that support the reasons for your termination; is that correct, sir?

A. Yes, it is.

Q. And is this what you relied on to make your decision?

A. I did.

Q. In making your decision, did you consider at all the fact that she'd filed previously a sexual harassment claim?

A. Yes, we did.

Q. In what way was that considered?

A. In the way that it had been investigated. Also, the fact that the allegation—her allegations came subsequent to her counseling for her work habits and behavior. And in that fashion was where it was received.

Q. Did you terminate her because she filed the charge of discrimination?

A. No. Not at all, no.

Lorenzo Dep. at 3940 (ECF No. 36–4). Given the context of Lorenzo's testimony, it is clear that there is no direct evidence of discrimination as Lorenzo's testimony "may be interpreted as referring only to Plaintiffs unreasonable complaints of discrimination, they cannot be considered direct evidence of a retaliatory motive." *Vinson v. Dep't of Corr.*, 672 F.Supp.2d 1247, 1265 (N.D.Fla.2009) ("Indeed, it is not unlawful for an employer to consider an employee's constant, unreasonable complaints of discrimination when determining whether to grant an employee a promotion or other job assignment that requires the exercise of reasoned judgment.").[2]

■■■■■ Absent direct evidence of discrimination or retaliatory discharge, Ramirez must establish a prima facie case of retaliation under Title VII, which requires Ramirez to show that: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford*, 529 F.3d at 970. To establish protected conduct under Title VII, Ramirez must first establish that she had a "good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997). Ramirez's belief must not only have been "honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.* The objective reasonableness of Ramirez's complaint is determined in accordance with Eleventh Circuit precedent. *See Butler v. Alabama*

*Dept. of Transp.*, 536 F.3d 1209, 1214 (11th Cir.2008) ("Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable.").

■■■■■ Here it is unclear whether Ramirez had a good faith belief that she was subjected to a hostile work environment. Ramirez allowed months to pass between the alleged incidents of harassment, and more importantly, never felt the need to report Rubin's conduct until she learned that Rubin had complained of her to her supervisors. Even assuming Ramirez had a good faith belief that she was subjected to a hostile work environment, however, Ramirez did not engage in a protected activity because her belief was not objectively reasonable in light of Eleventh Circuit precedent. By the time Ramirez filed her complaint with the Fire Department's Internal Affairs division in March of 2008, the Eleventh Circuit had already issued numerous decisions finding conduct far more frequent and severe than the conduct Ramirez alleges to not rise to the level of a hostile work environment. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 584–86 (11th Cir.2000), abrogated on other grounds as recognized by *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir.2008); *Mitchell v. Pope*, 189 Fed.Appx. 911, 912–15 (11th Cir.2006); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (en banc); *see also supra* Part III.A. Consequently, as Ramirez cannot establish that she was engaging in a protected activity, she cannot establish a prima facie case

---

**2.** A memorandum informing an employee to fire Ramirez because she filed a sexual harassment complaint would be "the quintessential example of direct evidence." *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1190 (11th Cir.1997).

of retaliatory discharge, and summary judgment is awarded in favor of Defendant as to Count II of Ramirez's Complaint.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED.

All claims against Defendant Miami–Dade County are DISMISSED WITH PREJUDICE. The Clerk of Court is directed to CLOSE this case. All pending motions are DENIED AS MOOT.